IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| HONSON LUMA, | * |
| Plaintiff, | * |
| v. | * |
| | Civil Action JRR-20-2504 |
| DIB FUNDING INC. & SUNSHINE CAPITAL, INC., | * |
| | * |
| Defendants. | |

\* \* \* \* \* \* \* \* \* \* \*

# REPORT AND RECOMMENDATION

This Report and Recommendation addresses the pending Renewed Motion for Default Judgment (the "Renewed Motion") filed by self-represented plaintiff Honson Luma ("Plaintiff") pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. ECF No. 50. Plaintiff filed this civil action against defendants Dib Funding Inc. ("DFI") and Sunshine Capital, Inc. (collectively, "Defendants")[1] seeking reversal of a decision rendered on July 2, 2020, by the Trademark Trial and Appeal Board ("TTAB"), a component of the United States Patent and Trademark Office ("USPTO"). ECF No. 1 (Compl.). By Order of the Court entered on July 27, 2023, this matter was referred to the undersigned magistrate judge to review the Renewed Motion and make recommendations concerning a disposition of the motion. ECF No. 51. For the reasons stated herein, the undersigned recommends that the Renewed Motion be denied for lack of personal jurisdiction and that Plaintiff be afforded 30 days to file a motion for transfer.

---

[1] It is unclear from filings made by Plaintiff in this matter whether he regards DFI and Sunshine Capital as separate defendants or as a single defendant. At times, he refers to a singular "Defendant" or "Defendant Corporation" without clarifying which entity he is identifying, and, at other times, he refers to "Defendants," "Defendant Corporations," or each defendant by its name. While it is apparent that the two entities are related and perhaps controlled by the same principal, they appear to be separate entities. Herein, the undersigned will refer to a singular "Defendant" only when quoting Plaintiff's use of that identifier, which the undersigned will construe as a reference to both Defendants collectively.

I.      BACKGROUND

   A. Factual Background[2]

Plaintiff is "an individual who resides and conducts business relative to the cryptocurrency Dibcoin in the State of Maryland and particularly in the city of Baltimore, Maryland." Compl. ¶ 1. "Defendant" is "a corporation organized and existing under the laws of the State of Michigan and with its principal place of business recently relocated to city of Rockford, Michigan."[3] *Id.* ¶ 2. "While located in Florida and Delaware, the Defendant Corporation made contracts for sales, services and purchases in the state of Maryland, . . . the Defendant executed contracts for purchase of companies in Maryland using Dibcoin, the Defendant executed contracts for purchasing patent applications with Dibcoins from individuals who reside in Maryland, [and] the services provided under the trademark [DIBCOIN] were provided in Maryland. . . ." *Id.* ¶ 4. DFI and Sunshine Capital were "registered in the state of Florida when the events occurred giving rise to the present litigation." *Id.*

Plaintiff became a Vice President of Sunshine Capital by entering into a Compensation Agreement with the company on July 28, 2016. Compl. ¶¶ 61, 63; ECF No. 27-1 at 5–9; ECF No. 52-2. At that time, "Plaintiff was regarded by Defendants as a seasoned futures and cryptocurrencies trader[]" and "as bringing extensive knowledge of the cryptocurrency market—not only as a trader but also as a creator and programmer of cryptocurrencies to his new role at [SCI]." Compl. ¶¶ 16, 17.

Prior to entering the Compensation Agreement of July 28, 2016, Plaintiff had created a

---

[2] The facts described herein are derived from Plaintiff's Complaint and Appeal from Trademark Trial and Appeal Board in this matter (the "Complaint") and from exhibits presented by Plaintiff in support of the Renewed Motion.

[3] Defendant's principal, Adam Petty, has stated in filings with the Court that DFI has "suspended operations" and that SCI "was a majority owned subsidiary of [DFI]" but "was dissolved[]" in 2017. ECF No. 32 at 1–2.

"virtual currency" and used the term "DIBCOIN" to refer to this virtual currency. Compl. ¶¶ 13, 14, 23. By July 6, 2016, Plaintiff had created 300,000,000 Dibcoins on Coinprism, a "computer network" and "free online Bitcoin wallet allowing for the creation, issuing, sending and receiving of [virtual] coins." Compl. ¶¶ 13, 19, 24. On that date, Plaintiff sent an email[4] to Daniel J. Duffy[5] with the subject line "2nd Draft from Honson" and attaching a document with the header "Dibcoin White Paper."[6] Compl. ¶ 8; ECF No. 27-5 at 2–3; ECF Nos. 52-3 & 52-4. Duffy was a trustee with "sole authority to make investment decisions on behalf of the trust[]" that owned DFI and Sunshine Capital at the time. Compl. ¶¶ 10, 11, 43. Plaintiff describes this white paper as a "solicitation/proposal/advertisement for sale and buy-in of services offered in relation to the 300 million DIBCOINs the Plaintiff had created and listed on Coinprism." ECF No. 52 at 2. The document was created "as a proposal as to how the Dibcoin [Plaintiff] created could work together with Sunshine Capital Stock in order to make them both more valuable." Compl. ¶ 15. The white paper described Dibcoin as "an asset back [sic] by one share of [DFI]" and stated that "300,000,000 million [sic] Dibcoins" were "available" at the time. ECF No. 27-5 at 3; ECF No. 53-4.

On July 8, 2016, Plaintiff sent another email to Duffy, with a copy to Adam Petty and Jim Scheltema, containing information under the header "Dibcoin Presell Details." Compl. ¶¶ 31, 32; ECF No. 27-5 at 4–5; ECF No. 52-5. This email "was a proposal for trading the 300 million [D]ibcoins on the WAVES Platform." Compl. ¶ 34. Petty was not an officer of DFI at the time. Compl. ¶¶ 57, 58. Scheltema was president of DFI and Sunshine Capital. Compl. ¶¶ 49, 52, 53.

---

[4] Plaintiff states incorrectly in the Complaint that the email is dated July 5, 2016. Compl. ¶ 8. The date reflected on the copy filed with the Court is July 6, 2016. ECF No. 52-3.

[5] The recipient email address is josephallendibfunding@yahoo.com, but Plaintiff states in the Complaint that he used this email address to communicate directly with Duffy. Compl. ¶ 8.

[6] This second draft "was similar to" a first draft Plaintiff had proposed in June 2016. Compl. ¶ 18.

3

Duffy eventually "promised to purchase Dibcoins from Plaintiff with Sunshine Capital Stock in the amount of 100,000 shares[,]" to which "Plaintiff agreed." Compl. ¶ 27. "At $8 per share of Sunshine Capital Stock and a Dibcoin sale value of $1 per coin as proposed," Plaintiff was paid 100,000 shares of Sunshine Capital stock for 800,000 Dibcoins on July 18, 2016. Compl. ¶ 28; *see also* ECF Nos. 27-4 & 52-6 (certificate for 100,000 shares of Sunshine Capital stock); ECF No. 52-8 (DIBCOIN distribution register reflecting distribution to "D.J.D./Trustee"). Following this sale, Plaintiff "was under no obligation to assist Sunshine Capital in the execution of their business goals." Compl. ¶ 59.

On July 23, 2016, Plaintiff sent another email to Duffy, Petty, and Scheltema with the subject line "Alright Guys, I'm Taped [*sic*] out (Business Summary)." Compl. ¶¶ 36, 37; ECF No. 27-5 at 6–8; ECF No. 52-7 at 2–4. This email proposed certain "[o]bjectives" for DFI, to include "[t]ransform[ing] [DFI] into a digital asset called DIBCOIN" and "[t]rad[ing] DIBCOIN on a decentralize [sic] exchange for easy access[.]" *Id.* At this point, DFI "was not transformed into a digital asset called [D]ibcoin[,]" and "Dibcoin was functional and operating independent of any of [DFI]'s goals and/or purposes." Compl. ¶¶ 38, 39.

Plaintiff entered the Compensation Agreement with Sunshine Capital on July 28, 2016, by which Plaintiff was retained as a Vice President with the responsibility "to provide general management services" to Sunshine Capital. Compl. ¶¶ 61, 63; ECF No. 27-1 at 5–9; ECF No. 52-2. Plaintiff was "at liberty to provide general management services to any other person, firm or corporation." Compl. ¶ 62; ECF No. 27-1 at 5; ECF No. 52-2 at 2. Sunshine Capital agreed "to compensate [Plaintiff] in the amount of one million restricted common shares." ECF No. 27-1 at 6; ECF No. 52-2 at 3.

On August 5, 2016, Plaintiff created 5,000,000,000 additional Dibcoins on the Omni Layer,

4

a platform that "provides for electronic transfer of a virtual currency." Compl. ¶¶ 65, 66. These Dibcoins "were created for the ownership and control of the Plaintiff[]" and "were not created under the direction of Defendants." Compl. ¶¶ 67, 68. At this time, there remained 333,333 shares of Sunshine Capital stock due to Plaintiff pursuant to the Compensation Agreement. Compl. ¶ 70. "Sunshine Capital did not pay [Plaintiff] the shares of stock as agreed in the [Compensation Agreement]." Compl. ¶ 79. "The Defendants did not pay Plaintiff for listing Dibcoin on Cryptocurrency Exchanges in 2017." Compl. ¶ 72.

"The execution of the Defendants' goals depended on the use of Sunshine Capital Stock with Dibcoins." Compl. ¶ 71. In 2017, "Defendant signed a purchase agreements [sic] for [D]ibcoins with Rx Smart Coffee," a Maryland-based corporation. Compl. ¶ 73. DFI "signed a purchase agreement with David and Stephanie Miller to purchase two patent applications with [D]ibcoins." Compl. ¶ 77. David and Stephanie Miller were residents of Maryland, Compl. ¶ 78, and David Miller was the principal of Rx Smart Coffee, ECF No. 52-15. In April 2017, the Security and Exchange Commission ("SEC") suspended the trading of Sunshine Capital's securities, rendering Defendants' business goals "unattainable[.]" Compl. ¶¶ 80, 81; ECF Nos. 52-10, 52-11 & 52-13. Defendants made a statement to a regulatory agency that "it [sic] was no longer pursuing the goals involving stock and [D]ibcoin." Compl. ¶ 82; ECF No. 52-12.

Plaintiff resigned from his position in July 2017. Compl. ¶ 85; ECF No. 52-14. DFI "abandoned the operation controlled by Plaintiff and attempted to seize control of the Dibcoins created by Plaintiff." Compl. ¶ 86. "Plaintiff continued to facilitate trading and other operations of the Dibcoin network despite [DFI's] desertion of the operation." Compl. ¶ 87. DFI "did not pay Plaintiff anything toward or for the creation of Dibcoin[,]" "did not pay Plaintiff anything toward or for the listing of Dibcoin[,]" and "did not pay Plaintiff anything toward or related to Dibcoin."

5

Compl. ¶¶ 88–90.

On July 20, 2017, Plaintiff filed an application with USPTO to register the mark DIBCOIN, and the registration issued on February 6, 2018, under Registration No. 5396033. ECF No. 36-1 at 1; Compl. at 1. Subsequently, DFI filed a petition with the USPTO seeking cancellation of the registration on the ground that Plaintiff was not the owner of the DIBCOIN mark at the time he applied for registration. ECF No. 36-1 at 2; Compl. at 1. On July 2, 2020, TTAB issued a decision finding that Plaintiff was not the owner of the DIBCOIN mark at the time he filed the application that matured into Registration No. 5396033, granting DFI's petition, and cancelling the registration. ECF No. 36-1 at 16; Compl. at 1. (A copy of TTAB's decision is docketed at ECF No. 36-1). The instant suit followed, seeking reversal of TTAB's decision and a declaration by the Court that the Compensation Agreement is not valid.

### B. Procedural Background

On August 31, 2020, Plaintiff filed the Complaint and Appeal from Trademark Trial and Appeal Board in this matter (the "Complaint") seeking reversal of TTAB's decision cancelling his registration of the DIBCOIN mark. On March 2, 2021, the Honorable Ellen L. Hollander granted Plaintiff's request for leave to serve Defendants by publication. ECF Nos. 11 & 12. On April 14, 2021, Plaintiff filed a Proof of Service by Publication and Verified Statement of Mailing confirming that Defendants were served a summons and copy of the Complaint by publication in a newspaper with circulation in Kent County and Ottawa County, Michigan, and by registered mail. ECF No. 13.

Defendants' responsive pleading was due on or before April 26, 2021. On that date, the Court received correspondence from Adam Petty, who identified himself as "the CEO and majority owner of Dib Funding, Inc." and provided an address in Kent County, Michigan. ECF No. 14.

Petty stated that he had become aware of the lawsuit and requested additional time "to secure legal representation." ECF No. 14. The Court entered an Order granting an extension of time to May 28, 2021. ECF No. 15. On May 28, 2021, the Court received further correspondence from Petty requesting additional time to obtain counsel. ECF No. 19. The Court entered an Order granting Defendants "until June 25, 2021, to obtain counsel." ECF No. 20. No attorney entered an appearance on behalf of either Defendant. On June 29, 2021, Plaintiff moved the Clerk of Court for entry of default against Defendants. ECF No. 21. The following day, the Clerk entered default against Defendants and provided notice of default. ECF No. 22 (Order of Default); ECF No. 23 (Notice of Default).

On July 1, 2021, Petty filed *pro se* a motion to intervene as a co-defendant. ("Intervention Motion"), ECF No. 24, and a motion to dismiss the case for lack of personal jurisdiction or alternatively, to transfer the matter to the Western District of Michigan ("Motion to Dismiss"), ECF No. 25. In the Intervention Motion, Petty stated that he was president, CEO, and majority shareholder of DFI. ECF No. 24 at 2. On July 13, 2021, Plaintiff filed a request for "Clerk's Entry of Default Judgment" against Defendant ("Default Judgment Motion"). ECF No. 27. On July 20 and July 21, 2021, Plaintiff filed responses in opposition to Petty's Intervention Motion and Motion to Dismiss. ECF Nos. 28 & 30. On August 4, 2021, Petty filed a "Motion to Deny Default Judgement Against Defendants and Motion for Summary Judgement Against Plaintiff" ("S.J. Motion"), ECF No. 31, and "Request to Abate Default Motion" ("Abatement Motion"). ECF No. 32. In the latter filing, Petty stated that DFI had "suspended operations" "[a]s a result of this ongoing litigation over the trademark rights of DIBCOIN," and therefore lacked the ability to engage an attorney. ECF No. 32 at 1–2. Petty further stated that "Sunshine Capital, Inc., a publicly traded company, was a majority owned subsidiary of [DFI]," but that it "was dissolved[]" after

"the SEC suspended trading" in April 2017. *Id.* at 2. On August 28, 2021, Plaintiff filed responses opposing Petty's S.J. Motion and Abatement Motion. ECF Nos. 33 & 34.

On January 19, 2022, Judge Hollander entered a Memorandum Opinion and Order denying Petty's Intervention Motion and denying without prejudice Plaintiff's Default Judgment Motion and Petty's Motion to Dismiss and S.J. Motion. ECF Nos. 36 & 37; *Luma v. DIB Funding, Inc.*, No. ELH-20-2504, 2022 WL 181156 (D. Md. Jan. 19, 2022). Regarding Plaintiff's Default Judgment Motion, the Court found that Plaintiff had offered insufficient evidence that he owned the DFI mark when he filed his application to register the mark, and that the exhibits attached to the motion were not adequate to justify a default judgment. ECF No. 36; *Luma*, 2022 WL 181156 at 21–22.\* Moreover, the Court determined, awarding a default judgment would have been premature because Petty, as principal of Defendants, "ha[d] made clear his desire to oppose the suit[]" and may have been "awaiting a ruling on the motion to intervene before resorting to obtaining a lawyer for defendants." *Id.* at 22. Accordingly, the Court directed Defendants to respond to the Complaint within thirty (30) days.[7] ECF No. 37. Pursuant to 15 U.S.C. § 1071(b)(2), the Court also directed that the Clerk mail copiesof the Complaint, docket sheet, Memorandum Opinion, and Order to USPTO.[8] *Id.* Since the date of the Court's Order, no attorney has entered an appearance on behalf of either Defendant, and the Director of USPTO has not moved to intervene.

On July 14, 2023, Plaintiff filed a Renewed Motion for Default Judgment (the "Renewed Motion"), attaching a memorandum of law and several exhibits in support of the motion. ECF No. 50. On July 27, 2023, the Honorable Julie R. Rubin entered an Order referring this matter the

---

[7] The Court specifically noted that it "would certainly entertain a renewed motion to dismiss for lack of personal jurisdiction, if such a motion were filed by a duly licensed attorney on behalf of the corporate defendants." ECF. No. 36; *Luma*, 2022 WL 181156 at *19 n.10.

[8] Section 1071(b)(2) provides that the Director of USPTO has the right to intervene in this action. 15 U.S.C. § 1071(b)(2).

8

undersigned to review the Renewed Motion and make recommendations concerning damages. ECF No. 51. On October 6, 2023, Plaintiff filed a supplemental memorandum in support of the Renewed Motion, attaching several additional exhibits. ECF No. 52. Plaintiff certified service of both the Renewed Motion and supplemental memorandum on Petty and Defendants. *See* ECF No. 50 at 16; ECF No. 52 at 7–8.

## II. APPLICABLE LAW

### A. Trademark Registration, Cancellation, and Appeal

"The owner of a trademark used in commerce" may apply for registration of the trademark on the principal register with USPTO. 15 U.S.C. § 1051(a)(1). "Regardless of their being related companies, only one is the owner. Whether the relationship is that of licensor/licensee or parent/subsidiary, the one entity which *controls* the nature and quality of the goods sold under the mark is the owner." *In re Wella A.G.*, 787 F.2d 1549, 1554 (Fed. Cir. 1986). The application to register a trademark on the principal register requires a statement by the applicant verifying that she or he is "the owner of the mark sought to be registered[,]" that "the mark is in use in commerce[,]" and that, to the applicant's knowledge, "no other person has the right to use such mark in commerce . . . when used on or in connection with the goods of such other person, to cause confusion, or to cause mistake, or to deceive. . . ." 15 U.S.C. § 1051(a)(3). "Subject to the provisions relating to the registration of trademarks, so far as they are applicable, service marks shall be registrable, in the same manner and with the same effect as are trademarks[.]" 15 U.S.C. § 1053. A person who believes that she or he "is or will be damaged . . . by the registration of a mark on the principal register" may file a petition with USPTO to cancel registration of the mark, "stating the grounds relied upon[.]" 15 U.S.C. § 1064. Upon the filing of a petition to cancel the registration of a mark, TTAB is responsible for "determine[ing] and decid[ing] the respective

rights of registration." 15 U.S.C. § 1067(a).

An applicant for registration of a mark or party to a cancellation proceeding who is dissatisfied with TTAB's decision may seek relief by civil action in district court, as an alternative to an appeal before the U.S. Court of Appeals for the Federal Circuit. 15 U.S.C. § 1071(b)(1); *see also B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 144 (2015); *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 155 (4th Cir. 2014). "In a Section 1071(b)(1) action, the district court resolves the issue of registration *de novo* and may consider evidence not previously submitted to the TTAB." *Apple, Inc. v. Cao*, No. 1:21CV1003 (TSE/JFA), 2022 WL 18781189, at *3 (E.D. Va. Jan. 14, 2022) (citing *B & B Hardware*, 575 U.S. at 144). "The district court acts as the finder of fact and has independent authority to grant or cancel registration of a proposed mark." *Id.* (citing *Swatch AG*, 739 F.3d at 155).

### B. Default Judgment

The Fourth Circuit recognizes a "strong policy that cases be decided on the merits[.]" *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 376 (4th Cir. 2013) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993)). "However, default judgment is available when the 'adversary process has been halted because of an essentially unresponsive party.'" *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794 (D. Md. 2010) (quoting *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005)). A defendant's default must be entered when the defendant fails to plead or otherwise defend, and that failure is shown by affidavit or otherwise. Fed. R. Civ. P. 55(a). If the plaintiff's claim against the defaulting defendant is not for a sum certain or ascertainable through computation, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact[]" but

10

"is not held . . . to admit conclusions of law." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—s admitted if a responsive pleading is required and the allegation is not denied."); *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010) ("It . . . remains for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action.") (citing *Ryan*, 253 F.3d at 780–81). Therefore, when reviewing a motion for default judgment, the court accepts as true the well-pleaded allegations in the complaint but must determine whether those allegations "support the relief sought in this action." *Ryan*, 253 F.3d at 780.

The U.S. Court of Appeals for the Fourth Circuit has held that "any judgment entered against a defendant over whom the Court does not have personal jurisdiction is void." *Gonzalez v. Spunk Indus., Inc.*, Civ. No. ELH-18-2935, 2019 WL 4392951, at *2–3 (D. Md. Sept. 13, 2019) (quoting *Koehler v. Dodwell*, 152 F.3d 304, 306–07 (4th Cir. 1998)). Judges of this Court have "recognized that 'it [is] prudent to determine, prior to entry of a default judgment,' whether [the Court] can exercise personal jurisdiction over a defendant." *Aerotek, Inc. v. Bernard Irby Inc.*, Civ. No. JKB-22-2748, 2023 WL 3074874, at *2 (D. Md. Apr. 25, 2023) (quoting *Gonzalez*, 2019 WL 4392951, at *3).

### III.  ANALYSIS

#### A.  TTAB Appeal

The undersigned recommends that the Court deny the Renewed Motion for Default Judgment for lack of personal jurisdiction over Defendants.

"[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Cntrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Maryland's long-arm statute provides that "[a] court may exercise personal jurisdiction over a person, who directly or by an agent . . . [t]ransacts any business or performs any character of work or service in the State; [or] [c]ontracts to supply goods, food, services, or manufactured products in the State[.]" Md. Code, Cts. & Jud. Proc. § 6-103(b)(1), (2). "The Maryland courts have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution." *Carefirst of Md.*, 334 F.3d at 396 (citing *Mohamed v. Michael*, 279 Md. 653, 370 A.2d 551, 553 (1977)). As a result, "[t]he statutory and constitutional requirements" for specific jurisdiction "ultimately collapse into virtually the same analysis." *Bradley v. DentalPlans.com*, Civ. No. CCB-20-1094, 2022 WL 2973979, at *3 (D. Md. July 27, 2022) (quoting *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 61 n.3 (4th Cir. 1993)).

The U.S. Supreme Court recognizes two types of personal jurisdiction: general and specific. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). General jurisdiction "extends to any and all claims brought against a defendant." *Id.* However, "[o]nly a select set of affiliations with a forum will expose a defendant to such sweeping jurisdiction[,]" such as when the forum is a corporate defendant's "place of incorporation" or "principal place of business." *Id.* (citations omitted, cleaned up). Specific jurisdiction "covers defendants less intimately connected with a [forum] State, but only as to a narrower class of claims." *Id.* A defendant subject to specific personal jurisdiction "must take some act by which it purposefully

avails itself of the privilege of conducting activities within the forum State." *Id.* (citation omitted, cleaned up). Additionally, "[t]he plaintiff's claims . . . 'must arise out of or relate to the defendant's contacts' with the forum[]" in order for the forum to exercise specific jurisdiction of the defendant. *Id.* at 1025 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017)). Ultimately, a court's exercise of personal jurisdiction "depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 1024 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316–17 (1945)).

The U.S. Court of Appeals for the Fourth Circuit has reduced "the due process requirements for asserting specific personal jurisdiction" to a three-prong test considering: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 351–52 (4th Cir. 2020) (citing *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)).

The court may address the issue of personal jurisdiction based on "motion papers, supporting legal memoranda and the relevant allegations of a complaint," and, in such a case, "the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (quoting *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989)). In this setting, the court "must construe all relevant pleading allegations in the light most favorable

to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* (quoting *Combs*, 886 F.2d at 676).

The undersigned recommends finding that the Court lacks both general and specific personal jurisdiction over Defendants. In the Complaint, Plaintiff avers that the State of Michigan is Defendants' state of incorporation and principal place of business.[9] Compl. ¶ 2. Plaintiff further alleges that, at some point, Defendants were "located in Florida and Delaware" and were "registered in the state of Florida when the events occurred giving rise to the present litigation." Compl. ¶ 4. Accepting these allegations as true, Defendants are not so closely affiliated with the State of Maryland to expose them to general personal jurisdiction in this forum. *See Freud Am., Inc. v. Milwaukee Elec. Tool Corp.*, No. 1:20CV109, 2020 WL 8248765, at *4 (M.D.N.C. June 17, 2020) ("Here, Plaintiff alleges that Defendant is incorporated in Delaware with its principal place of business in Wisconsin. . . . Thus, from the face of the Complaint, Defendant is not subject to general jurisdiction in any state but Delaware or Wisconsin.").

In his opposition to Petty's Motion to Dismiss, Plaintiff claims that Jim Scheltema, Sunshine Capital's President at the time Plaintiff became Vice President, was a resident of Maryland. ECF No. 28 at 2. Plaintiff argues the fact that "both president [and] vice president of Dib Funding and Sunshine Capital" resided in Maryland makes Maryland Defendants' "principal place of business[.]" *Id.* Plaintiff offers two documents to support his assertion that Scheltema resided in Maryland. The first document is a news report dated June 17, 2016, stating that Scheltema was "a licensed attorney in Maryland and *the District of Columbia* as well as . . . a Certified Public Accountant in *Florida*." ECF No. 28-2 at 3 (emphasis added). The second

---

[9] In his Motion to Dismiss, Petty stated that DFI was a Michigan corporation that owned a majority of Sunshine Capital, and Sunshine Capital "is a defunct company" that was domiciled in Nevada and had its offices in Michigan. ECF 25 at 1. In its decision to cancel Plaintiff's trademark registration, TTAB found that DFI was "incorporated in Delaware and its majority owner [was] in Michigan." ECF No. 36-1 at 3.

14

document is a letter dated June 9, 2016, from Scheltema on behalf of "Small Cap Development, Inc.," which lists a *business address* in Columbia, Maryland. ECF No. 28-3 at 3. Neither of these documents establish that Scheltema personally resided in Maryland. The letter indicates that a company called Small Cap Development, Inc. maintained an address in Maryland, but it makes no mention of either DFI or Sunshine Capital and certainly does not indicate Maryland headquarters for either Defendant. Plaintiff's own personal residency in Maryland also falls short of establishing Maryland as either Defendant's principal place of business. Even, assuming *arguendo* that either Scheltema or Plaintiff conducted business on behalf of Defendants in Maryland, such in-state business does not, without more, constitute the close affiliation necessary to subject Defendants to general jurisdiction in Maryland. *See BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414, 137 S. Ct. 1549, 1559, 198 L. Ed. 2d 36 (2017) ("[I]n-state business . . . does not suffice to permit the assertion of general jurisdiction over claims . . . that are unrelated to any activity occurring in [the forum state].").

Though specific jurisdiction can extend a court's reach beyond resident Maryland corporations, the facts before us do not support an extension here. Plaintiff alleges in the Complaint that Defendants "made contracts for sales, services and purchases" in Maryland, and made contracts to purchase companies and patents in Maryland using Dibcoins. Compl. ¶ 4. While these allegations, accepted as true, suffice to make a prima facie showing that Defendants have availed themselves of the privilege of doing business in Maryland, Plaintiff fails to show that the claim for relief asserted in this case "arise[s] out of or relate[s] to" Defendants' contacts with Maryland. *Bristol-Myers Squibb*, 582 U.S. at 262.

"Courts addressing personal jurisdiction in TTAB appeals have consistently focused on the TTAB proceeding, rather than any contacts the defendant has in the forum, as the action giving

rise to the case." *Poly-Am., v. API Indus., Inc.*, No. 4:20-CV-837-SDJ, 2021 WL 8441917, at *4 (E.D. Tex. Sept. 30, 2021). *See also Peloton Cold Brew, LLC. v. Peloton Interactive, Inc.*, No. CV 21-3579, 2022 WL 3042651, at *2 (E.D. Pa. Aug. 2, 2022) (holding that specific jurisdiction of defendant in TTAB appeal lies in Virginia, where TTAB is located and cancelled plaintiff's trademark); *Freud Am.*, 2020 WL 8248765, at *5 ("Plaintiff's Complaint only involves Defendant to the extent Defendant challenged the validity of the [trademark registration] to the TTAB. Nothing in Plaintiff's Complaint 'arose' out of Defendant's contacts with North Carolina."); *Rieke Corp v. Am. Flange & Mfg. Co.*, 1:06-CV-275 AS, 2007 WL 1724897, at *5 (N.D. Ind. June 12, 2007) (plaintiff in TTAB appeal fails to make prima facie showing of specific jurisdiction over defendant in Indiana where "TTAB's Decision never even mentions the State of Indiana[]" and does not "in any way relate to or arise out of [defendant's] contacts with Indiana"); *Cardwell v. Investor's Analysis, Inc.*, 620 F. Supp. 1395, 1397 (D.D.C. 1985) ("where plaintiff seeks only reversal of the [TTAB's] decision[,] . . . plaintiff's claim arises from the [TTAB's] decision, not from defendant's contacts with the District").

Here, Plaintiff's claim arises out of, and principally relates to, DFI's petition to cancel Plaintiff's DIBCOIN mark registration with the USPTO and TTAB's decision to grant that petition and cancel Plaintiff's registration. These events occurred not in the State of Maryland, but in the Commonwealth of Virginia.

The facts that DFI filed a petition with USPTO for cancellation of Plaintiff's registration of the DIBCOIN mark and that Plaintiff happens to live and work in Maryland does not suffice to confer specific jurisdiction in Maryland over Defendants. Several courts have held that the mere filing of a petition with TTAB to cancel a plaintiff's trademark registration is not enough to confer specific personal jurisdiction in the plaintiff's home state. *See Freud Am.*, 2020 WL 8248765 at

16

\*5 (rejecting plaintiff's argument that "[defendant's] petition to cancel [plaintiff's trademark registration] was directed at [plaintiff's] property located in [North Carolina]," and citing "numerous courts [holding] that filing a petition with the TTAB does not confer specific personal jurisdiction over a defendant"); *Int'l Watchman Inc. v. Strap.ly*, Case No. 1:18 CV 1690, 2019 WL 1903557, at \*4 (N.D. Ohio Apr. 29, 2019) (rejecting Ohio-based plaintiff's argument that merely filing a proceeding to cancel plaintiff's trademark registration conferred personal jurisdiction in Ohio over New York-based defendant); *Younique, LLC v. Youssef*, No. 215CV00783JNPDBP, 2016 WL 6998659, at \*8 (D. Utah Nov. 30, 2016) (Utah-based plaintiff "failed to demonstrate that [California-based defendant's] petition to the TTAB created a 'substantial connection' to Utah"); *Impact Prods., Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1192 (D. Colo. Oct. 19, 2004) (rejecting Colorado-based plaintiff's argument that New Jersey-based defendant's sending "a cease and desist letter and then petitioning the TTAB to cancel [plaintiff's] federal registration of the disputed mark" confers personal jurisdiction over defendant in Colorado).

  Furthermore, Plaintiff's TTAB appeal does not arise from or relate to any contracts Plaintiff claims Defendants executed in Maryland. Plaintiff asserts that Defendants executed contracts to purchase certain patents and companies using Dibcoins in Maryland. These contracts are not the basis for Plaintiff's asserted entitlement to relief in the instant action, even assuming the DIBCOIN mark was used in connection with these purchases. Notably, the only such purchases identified in the Complaint as having occurred in Maryland are Defendants' alleged agreements to purchase Rx Smart Coffee, a Maryland-based corporation, and "two patent applications" from two Maryland residents. Compl. ¶¶ 73, 77, 78. Plaintiff alleges that these purchases were to be made using Dibcoins and that the purchase agreements were made in Maryland. Compl. ¶¶ 4, 77. Assuming these allegations to be true, Plaintiff fails to show that his claim for reversal TTAB's

decision arises out of or relates to these specific transactions. Notably, TTAB's decision cancelling Plaintiff's trademark registration makes no mention of these Dibcoin transactions. *See Freud Am.*, 2020 WL 8248765, at *5 ("The underlying controversy is the TTAB cancelling [plaintiff's trademark registration]; the underlying controversy has nothing to do with [defendant's] advertisements of its power tools in North Carolina, sales of its products in North Carolina, solicitation of business in North Carolina, nor its application for a Certificate of Authority to do business in North Carolina.").

Accordingly, the undersigned recommends a finding that the Court lacks personal jurisdiction over Defendants as to Plaintiff's claim for reversal of TTAB's decision cancelling Plaintiff's registration of the DIBCOIN mark. However, the undersigned recommends that the Court deny the Renewed Motion but does not recommend dismissal of the case at this stage. It should be noted that 15 U.S.C. § 1071(b)(1) sets a limitation of 60 days in which a party may file a civil action appealing a decision of TTAB. If the matter is dismissed, Plaintiff would be time barred from filing the matter in an appropriate forum. *See RLP Ventures, LLC v. All Hands Instruction NFP*, No. 19 C 3276, 2020 WL 1330376, at *4 (N.D. Ill. Mar. 23, 2020) (holding that plaintiff's TTAB appeal was time barred after an appeal timely filed in another court was dismissed for lack of personal jurisdiction). The undersigned recommends that Plaintiff be afforded a period of time to file a motion for transfer pursuant to 28 U.S.C. § 1406. *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").

### B. Declaratory Relief

The undersigned notes that the prayer for relief in the Complaint includes a request declaratory relief. Specifically, Plaintiff seeks a declaration that the Compensation Agreement of July 28, 2016, is "void and non-binding; . . . that Plaintiff had a right to take corporate opportunities for himself; [and] that Plaintiff owes no duty to Dib Funding, Inc., or any of its affiliates[.]" Compl. at 10–11. The Declaratory Judgment Act ("DJA") provides that "upon the filing of an appropriate pleading," a district court "may declare the rights and other legal relations of any interested party seeking such declaration," but it may only do so "[i]n a case of actual controversy within its jurisdiction[.]" 28 U.S.C. § 2201. Declaratory judgment actions must present a "real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). The Supreme Court has deemed the DJA "an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Pub. Affs. Assocs., Inc. v. Rickover*, 369 U.S. 111 (1962). Therefore, "[a] district court generally maintains discretion as to whether it will elect to 'declare the rights and other legal relations of any interested party.'" *Hogs & Heroes Found. Inc. v. Heroes, Inc.*, 202 F. Supp. 3d 490, 498 (D. Md. 2016) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007)).

The undersigned recommends finding that Plaintiff has failed to present "a case of actual controversy within its jurisdiction" for which declaratory relief is necessary. 28 U.S.C. § 2201. Plaintiff does not allege, for example, that Sunshine Capital has asserted any breach of the Compensation Agreement by Plaintiff or sought relief against Plaintiff for any such breach. Insofar as the terms of the Compensation Agreement affect the merits of Plaintiff's claim of ownership of the DIBCOIN mark and the registrability of the mark, that matter has been decided by TTAB and,

19

as explained above, the undersigned recommends finding that this Court lacks personal jurisdiction of Defendants as to Plaintiff's TTAB appeal. Accordingly, the Court has "good reason" to decline to entertain Plaintiff's claim for declaratory relief. *Id.* (citing *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994).

## IV.   CONCLUSION

For the reasons stated herein, the undersigned recommends the following:

1. Deny the Renewed Motion for Default Judgment (ECF 50); and

2. Permit thirty (30) days for Plaintiff to file a motion for transfer pursuant to 28 U.S.C. § 1406;

3. If Plaintiff fails to file a motion for transfer within thirty (30) days, dismiss this civil action with prejudice.

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and L.R. 301.5(b).

Date: November 3, 2023.

              /S/
              Matthew J. Maddox
              United States Magistrate Judge